DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KAREN BEAUSEY (CABN 155258)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6598
    FAX: (415) 436-7234
    Karen.Beausey@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT FOR FORFEITURE _IN REM_** |
| $87,305 in United States Currency, | |
| Defendant. | |

The United States of America, by its attorneys, David L. Anderson, United States Attorney, and Karen Beausey, Assistant United States Attorney for the Northern District of California, brings this complaint and alleges as follows:

**NATURE OF THE ACTION**

1. This is a judicial forfeiture action, as authorized by Title 21, United States Code, Section §§ 853 and 881(a)(6), involving the seizure and forfeiture to the use and benefit of the United States of America the following property:

$87,305 in United States Currency seized by law enforcement officers from the United States

1

mail on or about August 7, 2020, and currently in the custody of the Drug Enforcement Administration ("DEA");

(hereinafter, "Defendant Property"), as property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of a violation of 21 U.S.C. §§ 841 and/or 846, and thereby forfeitable pursuant to 21 U.S.C. § 881(a)(6).

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881(a)(6).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district and the Defendant Property is located in this district.

4. Intra-district venue is proper in the San Francisco within the Northern District of California.

## PARTIES

5. Plaintiff is the United States of America.

6. The Defendant Property consists of $87,305 in United States Currency seized by law enforcement officers from the United States mail on or about August 7, 2020, and currently in the custody of the DEA.

## FACTS

7. On August 7, 2020, D.E.A. San Francisco Task Force 2 (TF-2) Agents were contacted by DEA Special Agent Nguyen at JFK International Airport in New York regarding a suspicious traveler flying from JFK to San Francisco, CA. SA Nguyen related that she was contacted by TSA agents at JFK regarding a traveler named Xavier BATISTA. TSA had observed a large amount of United States currency in BATISTA's carry-on luggage when he passed through a TSA security screening checkpoint. SA Nguyen informed San Francisco DEA agents that BATISTA was traveling to SFO via JetBlue flight

#415, which was due to arrive at SFO at 10:54 a.m. that morning. SA Nguyen also provided San Francisco DEA agents with a physical description of BATISTA and with his date of birth (June 22, 1994).

8. In light of the information related to them by SA Nguyen, San Francisco DEA Task Force Officer Ariana Daggett conducted a criminal computer query of BATISTA, which produced negative results, indicating that BATISTA does not have a criminal history.

9. San Francisco Task Force #2 officers decided to meet BATISTA at SFO and to seek an interview with him regarding the purpose of his travel to California. Accordingly, at approximately 10:30 A.M. that morning, DEA agents went to gate B6 at SFO in anticipation of the arrival of BATISTA's arrival. The flight arrived at the gate at approximately 10:48 A.M., and at approximately 10:54 A.M. a male matching the description provided for BATISTA exited the jet way and began to walk towards the terminal exit. BATISTA was carrying a red duffle bag and a black backpack.

10. TFO Daggett approached BATISTA and said, "Xavier." BATISTA immediately paused and turned towards TFO Daggett's voice. TFO Dagget asked BATISTA, "Can I talk to you?" BATISTA immediately stated, "Yes." TFO Dagget and TFO Ryan Hyink were wearing plain clothes, not law enforcement uniforms. TFO Dagget and TFO Ryan Hyink identified themselves to BATISTA as a law enforcement officers and presented him with their issued identifications. In a conversational tone of voice, TFO Dagget advised BATISTA that he was not under arrest and that he was free to go at any time, and at all times BATISTA had clear, unobstructed paths to walk away from the conversations had he chosen to do so.

11. TFO Daggett asked BATISTA if he was in San Francisco for business or pleasure. BATISTA told TFO Daggett he was there for work. TFO Daggett asked BATISTA if she could see his driver's license, and BATISTA provided TFO Daggett with a driver's license in the name of "Xavier BATISTA." TFO Daggett asked BATISTA if the address on his driver's license was current and if he

received mail at that address, and BATISTA said "yes." TFO Daggett quickly returned BATISTA's driver's license to him. TFO Daggett advised BATISTA that she worked for the DEA and that they look for drugs coming through the airport. TFO Daggett asked if they could search his bags to make sure there was no illegal narcotics inside it. BATISTA said "yes," placed his duffle bag on the floor and began to unzip it.

12. TFO Hyink searched the red duffle bag and located a pair of jeans and a pair of swim trunks. TFO Hyink located and removed one rubber-banded bundle of U.S. Currency from each front pocket of the pair of jeans, and from each pocket of the swim trunks (for a total of four (4) bundles of cash). TFO Hyink then searched BATISTA's black backpack and located another pair of jeans and another pair of shorts. As before, TFO Hyink located one rubber-banded bundle of cash inside each of the front pockets of the jeans and inside the pockets of the shorts (for another total of four (4) bundles of cash). A quick examination of the eight bundles of cash revealed that the cash appeared to consist almost entirely of $100 bills and $50 bills, which TFO Daggett knows is an indicator of narcotics trafficking.

13. TFO Daggett has been a law enforcement officer since 2006 and a DEA Task Force Officer since 2014. During that time, she has investigated hundreds of narcotics trafficking violations, and has become familiar with common behaviors, tricks, and practices of individuals who travel to San Francisco to obtain illegal drugs. In her training and experience, TFO Daggett recognized the manner in which the currency was packed as consistent with narcotics smuggling. Specifically, the bundling of the money in rubber-banded stacks, the multiple denominations indicative of street level narcotics trafficking, and the concealment of the money within clothing, were methods of transporting money that TFO Daggett has observed used by narcotics traffickers in other investigations on which she has worked.

14. Daggett asked how much money BATISTA had in his pockets, and BATISTA removed

another rubber-banded bundle from the pants he was wearing and handed it to TFO Hyink. In total, TFO Hyink identified nine (9) bundles of United States Currency from BATISTA.

15. TFO Daggett asked BATISTA how much cash he had. BATISTA said he did not know exactly, but that he thought between $600,000-$700,000. From her observation of the size and number of the bundles of cash TFO Daggett did not believe BATISTA was carrying nearly that much. She asked numerous times for clarification about the amount of cash BATISTA thought he was carrying, but BATISTA would not or could not provide a more reasonable estimate. TFO Daggett asked BATISTA if he had packed the duffle bag and backpack himself and BATISTA stated he had. TFO Daggett found it highly unlikely BATISTA would not know at least roughly how much cash he was carrying if he packed the bags and the clothing containing the cash himself. This indicated to TFO Daggett that either BATISTA was lying about having pack the bag himself, or he was lying about not knowing the amount of cash he was carrying.

16. TFO Daggett asked what BATISTA was going to do with all the cash he was carrying, and BATISTA said his boss, "Barrack," gave him the money to buy products and tools to work in California. BATISTA told TFO Daggett he worked for a company named "Vertex Security," located at 400 2nd Avenue, New York, NY 10010, and he was in California to do a job. TFO Daggett asked BATISTA about the job and BATISTA said he did not have any information or location regarding the job. TFO Daggett asked BATISTA what he was supposed to do once he arrived in San Francisco. BATISTA said he was going to call his boss, "Barrack" (no last name), who would tell him what to do, but that he had not called Barrack yet. TFO Daggett asked BATISTA for more information about Barrack. BATISTA said he did not know Barrack's last name, but provided TFO Daggett with his phone number – (917) 250-7768.

17. TFO Daggett asked BATISTA when he purchased his airline ticket, and BATISTA said "last night." TFO Daggett asked BATISTA if he had a return ticket and he stated he did not have one

5

because he did not know how long the job was going to take. BATISTA told TFO Daggett two more co-workers, who he did not know, were supposed to be coming to California to work with him. In TFO Daggett's training and experience, she knows that most travelers (including business travelers) attempt to book airline travel at least two weeks in advance of the flight date, and purchase round trip tickets, in order to receive the lowest possible fare. On the other hand, TFO Daggett knows that Northern California is a source location for narcotics, and in her experience individuals who fly to San Francisco with the intention of purchasing illegal drugs frequently make their airline reservations shortly before the date of travel, and frequently purchase one-way tickets to make it difficult for law enforcement to determine when or how they intend to return to their city of origin.

18. TFO Daggett spoke with BATISTA about the large amount of cash hidden in his bags and carried in his pocket, and BATISTA agreed it was suspicious that a company would have someone carry cash across the United State for work, and not use a bank account or checks. TFO Daggett found the transportation of such a large amount of cash in order to conduct legitimate business to be suspicious. There are numerous branches of numerous banks in the Bay Area area, and BATISTA could just as easily – and far more safely – have withdrawn any cash he needed to purchase work supplies from a California branch rather than risk losing such a large amount of cash (or having it stolen) by transporting it from New York in luggage. In her training and experience TFO Daggett knows it is highly unusually for legitimate business visitors (or tourists) to travel with large amounts of cash, and that they (like most people in their daily lives) generally prefer to use credit cards and other forms of electronic payment, particularly for more expensive payments. She further knows that individuals involved in the purchase and/or sale of controlled substances frequently bring large amounts of cash when traveling to California to purchase controlled substances or to pay for previously-purchased controlled substances, and that individuals who sell controlled substances usually prefer to be paid in cash to avoid creating a paper trail.

19. TFO Daggett asked BATISTA how long he had worked at Vertex Security, and instead of answering that question BATISTA said he worked 5 days a week 8 hours a day, making $25 per hour. BATISTA told TFO Daggett he pays $2600 per month in rent and that he lives with his family. He stated that he pays taxes, that he has worked for Vertex Security for a year, and that prior to working for Vertex Security he worked for ADR Security for 4-5 years, making $18-$23 per hour.

20. TFO Daggett asked BATISTA if he was getting paid to bring the cash to California, and BATISTA said "no." TFO Daggett asked BATISTA to have "Barrack" contact her to discuss the currency.

21. TFO Daggett advised BATISTA that the cash going to be detained based on the totality of the circumstances, as she suspected the money was brought to California with the intent to purchase drugs or was the proceeds of a drug transaction. BATISTA did not protest the seizure and did not provide any further explanation for the presence of such a large sum of U.S. Currency in the suitcase.

22. The seized currency (the Defendant Property) was sealed into a DEA self-sealing evidence bag by TFO Daggett and TFO Hyink, as witnessed by BATISTA. BATISTA signed the DEA evidence bag as the owner/possessor of the currency detained in the investigation. BATISTA provided his contact information on a DEA-12 (receipt for seizure of cash) as 4018A E Tremont Ave 1, Bronx, NY 10465, and provided a phone number of (347) 515-8049. TFO Daggert provided BATISTA with a copy of the DEA-12 relating to the seizure. The consensual interview and search of BATISTA's luggage was completed at approximately 11:12 a.m.

23. Recognizing that it might become necessary to have a narcotics canine examine an item during the encounter with BATISTA, on August 7, 2020, at approximately 8:00 a.m., TFO Daggett had her certified narcotics canine "Ryker" conduct a search of the area near pole C-93 in terminal #3, where any suspected packages or drug proceeds would be later placed for examination. TFO Daggett advised TFO Hyink that her canine did not alert to the odor of narcotics in that area. At approximately 11:23

a.m., TFO Hyink placed the Defendant Property (which was contained within the sealed DEA evidence bag) behind a garbage can near pole C-93 in terminal #3 (within the area previously searched by TFO Daggett and Ryker).  At approximately 11:26 a.m., TFO Daggett had Ryker conduct a systematic search of the area where numerous other items were located, including the Defendant Property.  At approximately 11:26 a.m., Ryker alerted to the evidence bag which contained the Defendant Property by standing and staring at the evidence bag.  This is an indication to TFO Daggett that the odor of narcotics was emanating from the Defendant Property.

24. On August 7, 2020, at approximately 11:45 a.m., TFO Hyink, DEA SA Michael Vo, and DEA GS Musich transported the Defendant Property (still sealed in the evidence envelope) to the Bank of America located at 909 E. Hillsdale Blvd, Foster City, CA, for processing.  Once there, the currency was counted and determined to be $87,305.00 U.S. Currency.  The currency was subsequently converted into cashier's check # 0811528546, made payable to the U.S Marshal Service in the amount of $87,305.00 U.S. Currency.

25. On August 11, 2020, TFO Daggett contacted Vertex Security and spoke with an individual named "Barrack Ron."  Mr. Ron told TFO Daggett that BATISTA had worked at Vertex Security, but that he had not seen or heard from BATISTA since March 2020, when BATISTA resigned.  TFO Daggert asked Mr. Ron if he had provided BATISTA with any money to take to California for work purposes, and Mr. Ron stated that he had not.  Mr. Ron stated that BATISTA had worked for Vertex Security for approximately 6-8 months.  Mr. Ron's statement directly contradicted BATISTA's explanation of why he flew to California, why he brought $87,305 in cash with him, how he was employed at the time, and how long he worked for Vertex Security, indicating to TFO Daggett that BATISTA lied to her about those matters during their interview.

26. The DEA timely initiated administrative forfeiture proceedings against the Defendant Property.  On October 28, 2020, DEA received a timely claim for the Defendant Property from

BATISTA. Pursuant to 18 U.S.C. § 983(a)(3)(A) the United States thereafter had ninety (90) days within which to initiate judicial forfeiture proceedings. The instant complaint is filed within that 90-day time limit.

## **CLAIM FOR RELIEF**

1. The United States incorporates by reference the allegations in paragraphs 1 through 26 as though fully set forth herein.

2. Title 21, United States Code, Section 841(a) prohibits the manufacture, distribution, or dispensing, and possession with the intent to distribute a controlled substance.

3. Title 21, United States Code, Section 846 makes it a crime to attempt or to conspire to violate Title 21, United States Code, Chapter 13, Subchapter I, including Title 21, United States Code, Sections 841(a).

4. Title 21, United States Code, Section 853 provides that any person convicted of violating (among other things) Title 21, United States Code, Sections 841(a) and 846 shall forfeit any property constituting or derived from any proceeds the person obtained, directly or indirectly, as the result of that violation, and any of the person's property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of that offense.

5. Title 21, United States Code, Section 881(a)(6), provides, in part, for the forfeiture of all moneys, securities or other things of value furnished or intended to be furnished to a person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys and securities used or intended to be used to facilitate any violation of Title 21, United States Code, Chapter 13, Subchapter I, including violations of Title 21, United States Code, Sections 841(a) and 846.

6. In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the Defendant Property represents proceeds traceable to money, securities or other things of value furnished to a person in exchange for a controlled substance, or intended to do

so, in violation of Title 21, United States Code, Sections 841(a) and 846, and thus subject to forfeiture under Title 21, United States Code, Sections 853 and 881(a)(6).

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of the Defendant Property; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; and that judgment of forfeiture be entered; that the Court enter judgment forfeiting the Defendant Property; and that the United States be awarded such other relief as may be proper and just.

DATED: January 25, 2021              Respectfully submitted,

                                     DAVID L. ANDERSON
                                     United States Attorney

                                     _____
                                     Karen D. Beausey
                                     Assistant United States Attorney

## VERIFICATION

I, Drug Enforcement Administration Task Force Officer Ariana Daggett, state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration. I am a case agent assigned to this case. As such, I am familiar with the facts and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained therein to be true.

* * * * *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25 day of January, 2021, in SAN FRANCISCO, California.

_____
Task Force Officer Ariana Daggett
Drug Enforcement Administration

11

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1. U.S. Government Plaintiff
2. U.S. Government Defendant
3. Federal Question *(U.S. Government Not a Party)*
4. Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent─Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | 440 Other Civil Rights | **HABEAS CORPUS** | | 864 SSID Title XVI | 890 Other Statutory Actions |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

1. Original Proceeding
2. Removed from State Court
3. Remanded from Appellate Court
4. Reinstated or Reopened
5. Transferred from Another District *(specify)*
6. Multidistrict Litigation–Transfer
8. Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   Yes   No

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)*   **SAN FRANCISCO/OAKLAND**   **SAN JOSE**   **EUREKA-MCKINLEYVILLE**

**DATE**

**SIGNATURE OF ATTORNEY OF RECORD**

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

II. **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

   (1) United States plaintiff. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

   (2) United States defendant. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

   (3) Federal question. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

   (4) Diversity of citizenship. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.

   (1) Original Proceedings. Cases originating in the United States district courts.

   (2) Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

   (3) Remanded from Appellate Court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

   (4) Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

   (5) Transferred from Another District. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

   (6) Multidistrict Litigation Transfer. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

   (8) Multidistrict Litigation Direct File. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

   Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

IX. **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.